# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

RONALD G. KIDD,

        Plaintiff,

v.                              CIVIL ACTION NO. 5:10-cv-01037

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## ADOPTING FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 401- 433. By Standing Order entered on August 23, 2010 (Document 4), this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636.

On February 1, 2012, Magistrate Judge VanDervort submitted his proposed findings and recommended that the Court (1) deny Plaintiff's Brief in Support of Judgment on the Pleadings ("Pl.'s Mot.") (Document 12), (2) grant Defendant's Brief in Support of Judgment on the Pleadings ("Def.'s Mot.") (Document 13), (3) affirm the final decision of the Commissioner that Plaintiff was not disabled under the Social Security Act from December 16, 2006, through the date of the decision and (4) dismiss this matter from the Court's docket. Proposed Findings and Recommendation ("PF&R") (Document 15) at 16.

This matter is currently before the Court on Plaintiff's objections to the assigned Magistrate Judge's PF&R, filed on February 20, 2012, and Defendant's response thereto. (*See* Plaintiff's Objections to the Report and Recommendations ("Pl.'s Obj.") (Document 16); Defendant's Response to Plaintiff's Objections to the Magistrate's Report and Recommendation (Document 17)). Upon consideration of the parties' cross-motions for judgment on the pleadings, the Magistrate Judge's PF&R, Plaintiff's Objections, Defendant's Response and the entire record in this case, the Court overrules Plaintiff's objection, adopts the PF&R, and affirms Defendant's final decision.

*I.*

On July 19, 2007 Plaintiff, Ronald G. Kidd, filed an application for DIB in which he alleged a disability onset date beginning December 16, 2006, as a result of the following conditions: "heart condition, diabetes, back injury, lung disease, residuals from left arm injury, torn rotator cup [sic] in right arm, problems with vision, injury to my neck, torn meniscus in left knee and carpel [sic] tunnel in both hands."[1] (Pl.'s Mot. at 1; AR at 135, 144, ).[2] Plaintiff's application was denied on November 16, 2007 (AR at 73), and upon reconsideration on February 14, 2008 (AR at 82.) Plaintiff requested a hearing, and the hearing was held on March 3, 2009, before United States Administrative Law Judge ("ALJ"), Geraldine H. Page. (AR at 33.) Both Plaintiff and John Newman, a vocational expert, testified. (AR at 33-70.) On March 31, 2009, the ALJ issued her

---

[1] Plaintiff provided the following explanation regarding how his illnesses or conditions limited his ability to work:
> I have several injuries and I have limited use of of [sic] my right and left arms due to injuries. I am not able to do the requirement of the job anymore. I am on the pump for my diabetes.

(AR at 135.)

[2] "(AR at ___)" refers to the administrative record which was filed by the Defendant on December 13, 2010. (Document 11).

decision finding that Plaintiff is not disabled within the meaning of the Act because he has the residual functional capacity, age, education and work experience to make a successful adjustment to other work that exists in significant numbers in the national economy.  (AR at 32.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and on June 25, 2010, that decision became the final decision of the Commissioner.  (AR at 1.)  On August 22, 2010, Plaintiff sought judicial review of Defendant's final decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

*II*.

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration utilizes a five-step inquiry to determine eligibility for social security benefits.  This inquiry requires the Commissioner to consider, in sequence, whether Plaintiff (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that meets or equals the requirements of a listed impairment; (4) could return to his past relevant work and (5) if not, whether he could perform other work in the national economy. (20 C.F.R.§ 404.1520).  The steps are followed in order, and if a Plaintiff is determined not to be disabled at one step, the evaluation proceeds to the next step.  (*See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005)).

Section 405(g) of the Social Security Act provides that, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." (42

U.S.C. § 405(g)). This language limits the Court's role in reviewing the ALJ's decision to determining whether her findings are supported by substantial evidence. (*See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard."); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."))). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*Craig*, 76 F.3d at 589; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) ("Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance.")) (citation omitted). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." (*Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971)). "In reviewing for substantial evidence, [the reviewing court] do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." (*Craig*, 76 F. 3d at 589 (citing *Hays*, 907 F.2d at 1456.)) The Court will defer to the Commissioner's decision if "conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled[.]" (*Johnson,* 434 at 653).

With this framework established, the Court will consider the parties' written submissions, the PF&R and Plaintiff's objection thereto.

III.

At step 1, the ALJ concluded Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and had not engaged in substantial gainful activity since December, 16, 2006, the alleged onset date. (AR at 16.) At steps 2 and 3, the ALJ found that Plaintiff suffered from several severe impairments, including diabetes mellitus, degenerative disc disease of the lumbar spine status post laminectomy, degenerative joint disease of the left knee, diabetic retinopathy, chronic pain in his right shoulder (rotator cuff), status post coronary-aorta bypass grafting surgery, and pneumoconiosis. However, she determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id*.) The ALJ also found that while Plaintiff alleged hypertension, hyperlipidemia, gastroesphageal reflux disease (GERD), peripheral neuropathy, neck pain, elbow pain, carpal tunnel syndrome, anxiety, and depression, none of those ailments more than minimally impacted Plaintiff's ability to perform work-related activities. (*Id*. at 16-17.) At steps 4 and 5, the ALJ found that Plaintiff could not perform his past relevant work as a coal miner, roof bolter. However, she determined that he had the residual functional capacity to perform a range of light work. In light of this finding, Plaintiff's age, high school education and work experience, and upon consideration of the testimony of the vocational expert, the ALJ found that jobs, such as cashier, packer, and assembler,[3] existed in the regional and national economy

---

[3] "RFC assesses the 'maximum degrees to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Mastro*, 270 F.3d at 179 (citing 20 C.F.R. 404, Subpart P, App.2 § 200.00©).

Specifically, the ALJ found that Plaintiff could lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently, stand, walk and sit for six (6) hours of an eight (8) hour work day. Plaintiff could also occasionally climb ramps and stairs, balance, kneel, crawl, stoop, crouch and reach overhead. However, Plaintiff could not be exposed to work that involves polluted environments, excessive respiratory irritants, and extreme temperature changes,
(continued...)

that Plaintiff could perform. The ALJ finally determined Plaintiff was not disabled as defined by the Social Security Act.

In his Complaint, Plaintiff alleges that the Appeals Council's decision to deny his request for review was arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence. (Compl. ¶ 6, (Document 2.)) In his brief in support of judgment on the pleadings, Plaintiff contends that the ALJ failed to "follow the 'slight abnormality rule' when he found that the Plaintiff's carpel tunnel, neck pain, elbow pain, depression, and post-traumatic pain disorder were not severe." (Pl.'s Mot. at 2.) Plaintiff also contends that "[i]f the ALJ needed clarification as to whether" he was diagnosed with carpel tunnel syndrome or whether medication was prescribed as a result of his complaints of depression, anxiety and irritability, she had a duty to re-contact his medical providers as contemplated by 20 C.F.R. § 404.1512(e), and that she failed to do so. (*Id.* at 3.) The Court observes that Plaintiff did not specifically challenge the ALJ's determination that his severe impairments did not meet, or medically equal, the requirements of listed impairments or that he had the residual functional capacity to perform light work, or that he could perform the tasks of a cashier, packer or assembler. Notably, and as relevant to the discussion below, Plaintiff also did not assert that his medical records were illegible or that the ALJ was precluded from fully considering his alleged impairments as a result of handwritten and illegible records.

In the Defendant's motion for judgment on the pleadings, he asserts that the ALJ's opinion should be affirmed. Defendant argues that the record evidence fails to show any medically determinable physical or mental impairment with respect to Plaintiff's asserted symptoms of neck

---

[3](...continued)
nor work around hazardous machinery, work at unprotected heights, climb ladders, ropes scaffolds, or work on vibrating surfaces. Further, any work has to account for plaintiff's visual deficits with respect to far acuity. (AR at 19-20.)

or elbow impairment or carpel tunnel syndrome. (Def.'s Mot. at 8-9.) Defendant asserts that although Plaintiff occasionally complained of pain in his neck and elbow, his clinical examinations were normal. With respect to Plaintiff's assertion that he suffers from carpal tunnel syndrome, Defendant acknowledges that Plaintiff claimed that he was diagnosed with this ailment and that it required surgery in 2000. However, Defendant contends that there is no record evidence of any such diagnosis since the date of Plaintiffs' alleged onset of disability. Defendant argues that Plaintiff is able to perform daily living activities, including mowing the lawn, performing household repairs and preparing light meals. Therefore, Defendant contends that the ALJ reasonably determined that Plaintiff's allegations in these instances "did not rise to the level of medically determinable impairments." (Def.'s Mot. at 9.)

Likewise, Defendant asserts that the ALJ properly found that Plaintiff's allegations of anxiety and depression were non-severe impairments. Defendant argues that: Plaintiff did not receive any mental health treatment, psychiatric counseling or psychiatric medications; Plaintiff's treatment notes indicate that he was "very irritable" and he was diagnosed with anxiety and situational depression, and he was not referred for mental health treatment. Defendant acknowledges that Plaintiff underwent a psychological evaluation based on his attorney's referral. He argues that the evaluation did not reveal significant limitations on Plaintiff's ability to perform basic mental work activities. Defendant also argues that the assessment that Plaintiff suffered from post-traumatic pain disorder was unsupported by the record.

Finally, Defendant argues that the ALJ did not need to contact Plaintiff's medical providers because the record evidence was adequate for the ALJ to determine that Plaintiff did not have a mental impairment where the medical records reveal Plaintiff rarely complained of mental health

7

issues and he was not medicated for such illnesses. Defendant argues "even though the ALJ did not find Plaintiff's mental impairments to be severe, he [sic] more than accounted for any functional limitations by restricting Plaintiff to the modest demands of unskilled work[]" which require little to no judgment to do simple duties that can be learned on the job in a short period of time. (Def.'s Mot. at 10-11) (citing 20 C.F.R. § 404.1568(a)). Finally, Defendant argues that the ALJ's decision is supported by the testimony of the vocational expert who identified a significant number of unskilled, light jobs existing in the economy, that could be performed by someone of Plaintiff's age, educational background, work experience and residual functional capacity. (*Id*. at 11.)

Magistrate Judge VanDervort, in his PF&R, described the process for adjudicating disability claims as provided by the Social Security Regulations, set forth a discussion of Plaintiff's medical records, considered Plaintiff's challenges to the Commissioner's decision and Defendant's arguments in support of that decision.[4] Magistrate Judge VanDervort found that the ALJ's decision regarding Plaintiff's neck pain, elbow pain and carpal tunnel syndrome is supported by substantial evidence of record. The Magistrate Judge observed that Plaintiff complained of neck and elbow pain occasionally, with the majority of those complaints occurring prior to December 16, 2006, but that his physical exams were normal. The Magistrate Judge also found that there was evidence in the record that Plaintiff was diagnosed with carpal tunnel syndrome prior to the alleged onset date, but that the evidence revealed that his burning sensation and range of motion significantly improved after surgery and he presented with no functional limitations. Magistrate Judge VanDervort considered the ALJ's findings with respect to Plaintiff's abilities to function within his activities of

---

[4] The Court notes that Magistrate Judge VanDervort included a detailed discussion of the medical evidence in this case, to which no objection has been made. Therefore, a further recitation of Plaintiff's complete medical record is not necessary here. However, the Court will include a brief discussion of the relevant medical findings in dispute and the ALJ's consideration of the same.

daily living. Additionally, the Magistrate Judge considered the ALJ's acknowledgment of Plaintiff's diagnoses of anxiety, irritability and situational depression, but found that substantial evidence of record supported the ALJ's decision that they were not severe impairments. The Magistrate Judge considered the ALJ's finding that the only evidence of mental disorders in the record was from Plaintiff's own consultative examination, and agreed that there was no evidence that Plaintiff sought mental health treatment during the relevant period of time and that his complaints of mental ailments began one year after the start of the relevant time period. The Magistrate Judge also concluded that the ALJ's determination was appropriate given the lack of evidence as to how Plaintiff was affected by his mental impairments and inconsistencies between the consultative examiner's notes and his opinion. Finally, Magistrate Judge VanDervort found that the ALJ was not required to re-contact Plaintiff's medical providers because the evidence of record was adequate.

*IV.*

Plaintiff timely filed his objection to the PF&R. In an approximately one page document, Plaintiff contends that the "Defendant erred in asserting that the ALJ did not have a duty to re-contact the Plaintiff's physician." (Pl.'s Obj. at 1.) Specifically, Plaintiff asserts that the ALJ should have contacted his physicians for additional information regarding his neck pain and prescription medications when she considered whether any mental impairment existed. (*Id.*) Plaintiff argues that "[m]ost of [his] doctor's notes are handwritten and illegible, thereby preventing the ALJ from thoroughly understanding [his] impairments." (*Id.*)

In response, Defendant contends that the ALJ was not required to re-contact Plaintiff's doctors regarding his depression and anxiety, particularly where the record is adequate for the ALJ

to consider whether Plaintiff is disabled. (Def.'s Resp. at 2.) Defendant argues that the record reveals few mental health issues, that Plaintiff sought no mental health treatment or psychiatric counseling during the relevant period, and was not prescribed psychiatric medications. (*Id.*) Defendant argues that Plaintiff was able to perform daily living activities and that the evidence of record supports the ALJ's decision.

The Federal Magistrates Act requires the district court to make a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Conversely, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Plaintiff did not challenge the Magistrate Judge's consideration of his argument that the ALJ failed to follow the "slight abnormality" rule when she found that the Plaintiff's carpal tunnel syndrome, elbow pain, and post-traumatic pain disorder were not severe. Moreover, Plaintiff did not challenge the balance of the Magistrate's findings. Therefore, to that extent, the Court adopts the Magistrate Judge's decision as stated in the PF&R. Consequently, the only issue before the Court is whether the ALJ erred in failing to re-contact Plaintiff's physicians regarding his medication for a mental ailment and his neck pain.

*V.*

Plaintiff bears the burden of proving he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5). *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). The Commissioner must evaluate every medical opinion received and consider it together with the rest of the relevant evidence in the record. 20 C.F.R. §§ 404.1527(b) and (d). The weight given to each medical opinion is generally determined by the relationship between the physician and the claimant. "Generally, [the Commissioner] give[s] more weight to opinions from [the] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment[.]" 20 C.F.R. §§ 404.1527(d)(2). However, this "treating physician rule" is not without its limits. Under the "rule," a "treating source's opinion [on the issue(s) of the nature and severity of an impairment] is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence of record." (*Id.*) Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citation omitted). Additionally, there are opinions provided by medical sources which are on issues which are reserved to the Commissioner "because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

The Court finds that Plaintiff's challenge to the PF&R is largely a restatement of his final argument as set forth in his brief for judgment of the pleadings, which was properly rejected by the Magistrate Judge. Plaintiff principally challenges the ALJ's findings regarding his allegations of a mental impairment and neck pain. Notably, he does not assert that the evidence of record is sufficient to find that his allegations with respect to these aliments warrant a finding of a severe medically determinable impairment. Instead, he argues that the ALJ should have re-contacted his physician for additional information "regarding [his mental health] prescriptions" and "regarding his neck pain." If an ALJ concludes that the record evidence is inadequate to determine whether a claimant is disabled, the ALJ "will seek additional evidence or clarification." 20 C.F.R. § 404.1512(e). The applicable regulation requires the ALJ to contact claimant's medical provider if the evidence "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Plaintiff does not assert which of these three instances are applicable here. Instead, he challenges the ALJ's finding that his medical record is "void of any indication as to whether he was prescribed medication."

First, contrary to the finding of the ALJ that Plaintiff was not prescribed medications as a result of his complaints regarding his mental ailment in February 2008, the Court finds that Plaintiff's medical records reveal that he was medicated. On February 29, 2008, Plaintiff visited his treating physician, Dr. Syed Rasheed, wherein it was noted that Plaintiff was "very irritable." (AR at 437.) As a result of his "anxiety and irritability," Dr. Rasheed prescribed 1 mg of Ativan. (*Id*.) At his next monthly visit, it is noted that Plaintiff "is going through a transition for retirement and he is kind of upset." (*Id*. at 436.) Dr. Rasheed diagnosed Plaintiff with "situational depression" and

12

continued him on his present medication, which included the 1 mg of Ativan. (*Id.*) Moreover, Plaintiff testified at the administrative hearing that he was taking Ativan.[5] (*Id.* at 50.) Notwithstanding this oversight, the Court finds that the record does not reveal any reason for the ALJ to inquire of Plaintiff's treating physician with respect to his prescription medications, as the record clearly sets forth the doctor's order to prescribe Ativan to the Plaintiff. The Court finds that the ALJ's determination that the record "does not establish the existence of a 'severe' medically determinable impairment related to any mental impairment" is supported by substantial evidence. The ALJ's determination was not based solely upon whether Plaintiff was prescribed medication for a mental ailment. The ALJ considered whether any mental impairment existed for a period of twelve months. The ALJ reviewed Plaintiff's medical records and found that they were silent for any complaints, clinical signs or treatment for any mental impairment outside of the two instances referenced above. (AR at 18.) The ALJ considered the wealth of medical evidence from Dr. Rasheed, a doctor whom Plaintiff visited monthly for eight years (Administrative Hearing Transcript, AR at 47.) Dr. Rasheed's medical notes did not include any treatment or a reference to a mental health evaluation, referral or counseling. The ALJ considered that the only other evidence of Plaintiff's mental disorders was the consultative examination conducted by L. Sargent, M.A., licensed psychologist, at the request of Plaintiff's counsel. Mr. Sargent diagnosed Plaintiff with a pain disorder, post-traumatic pain disorder and recurrent depressive episodes.[6] Mr. Sargent opined that Plaintiff functioned within the average to low average level of intelligence. The ALJ also

---

[5] The record also reflects that Plaintiff complained of having panic attacks. At the administrative hearing, Plaintiff testified that he was prescribed Ativan for his panic attacks. The ALJ noted as much in her decision. In the decision, the ALJ did not explicitly associate Plaintiff's use of Ativan with his complaints of irritability, anxiety, and depression, but with his statement that he suffered from panic attacks.

[6] The Court observes that at the conclusion of his report, Mr. Sargent recommended that Plaintiff seek mental health counseling. However, there is no record that Plaintiff sought such counseling after this recommendation.

13

considered Plaintiff's functional performance involving his activities of daily living, social functioning, concentration, persistence or pace and any episodes of decompensation presented in the evidence of record. The ALJ determined that Mr. Sargent's "assessment is contrary to the lack of longitudinal objective evidence in support of the claimant's actual impairment and how he is affected by it[]" and that his opinion was based upon a one-time assessment of the Plaintiff and was "not supported by his own clinical findings." (*Id*. at 19.) This is a determination that Plaintiff does not challenge. The ALJ reviewed the wealth of medical records from Plaintiff's treating physician which did not reveal that Plaintiff ever complained of severe mental impairment or any symptoms of such impairment. (*Id*.) The ALJ noted that there were no medical records revealing that Plaintiff ever received "specialized mental health or psychiatric counseling or treatment, nor has [he] ever been hospitalized for mental impairment." (*Id*. R 19.) Indeed, Plaintiff did not present any evidence of the same. Additionally, the record includes the November 9, 2007 examination by Dr. Mustafa Rahim in which Plaintiff denied having any anxiety or depression, suicidal thoughts or ideations, mania, or hypomania, delusions or hallucinations. (*Id*. at 296.) Therefore, the Court finds that Plaintiff's objection is without merit inasmuch as he argues that the ALJ had a duty to contact his physician to obtain additional information regarding whether he was prescribed medication for any mental ailment. The record before the ALJ reveals that he was prescribed Ativan. However, the record also reveals that Plaintiff's mental ailment was controlled by medication. There was no additional treatment ordered by his physician, and based on this conservative mode of treatment, the Court finds that the ALJ did not err in failing to contact his doctors for additional information. There is no conflict or ambiguity within his records as to any additional medications prescribed for

Plaintiff, and his medical records, from his treating physician, contained all the necessary information.

Plaintiff also argues that the ALJ should have re-contacted his physician regarding his neck pain. The ALJ found that Plaintiff's "musculoskeletal examinations with his family physician were always normal and there was never any real indication that the claimant had any 'medical determinable impairment'" resulting from pain in this area after the alleged onset date. (AR. at 17.) The Court has reviewed the Plaintiff's medical records and finds support for the ALJ's determination. Plaintiff's complaints regarding his neck were sporadic. In the instances in which his neck pain was noted, he was not sent for any additional testing, but was prescribed medication to decrease the stiffness of his neck. Moreover, the Court observes that in one instance, on January 7, 2008, when Plaintiff complained of neck pain, he also complained of a headache, an earache and a sinus infection. On March 27, 2007, the record from the Princeton Community Hospital revealed that Plaintiff did not have any neck pain. Upon a review of Plaintiff's medical records and the ALJ's finding, the Court find's Plaintiff's objection that the ALJ was required to contact his doctors regarding his neck pain is without merit. Plaintiff has not identified any conflict or ambiguity in the record, argued that his physician's notes do not contain all of the necessary information or that his physician's opinion does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

Finally, Plaintiff argues that the ALJ was prevented from thoroughly understanding his impairments because most of his doctor's notes were handwritten and illegible. The Court has reviewed the entire record of this case and finds that Plaintiff did not raise this argument before the administrative agency or in his brief in support of judgment on the pleadings. (*See* Letter from Jan

Dils, Plaintiff's counsel, to the Appeals Council (March 14, 2010), AR at 200) (statement concerning his contention that the ALJ's decision contain errors of law and fact)(Document 12). As such, the Court declines the invitation to consider this issue. *Tomblin v. Barnhart*, 141 F. App'x 181 (4th Cir. 2005) ("It is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved.") (unpublished decision) (quoting *Pleasant Valley Hosp., Inc. v. Shalala*, 32 F.32 67, 70 (4th Cir. 1994); *see also Hickman v. Chater*, No. 96-1953, 1997 WL 570874, *1 (4th Cir. Sept. 16, 1997) (unpublished decision) (appellate court refused to hear plaintiff's claim that ALJ should have solicited testimony of a vocational expert because she did not raise the claim at the administrative level, in her motion for judgment on the pleadings or in her objection to the magistrate judge's report); *Cline v. Chater*, No. 95 – 2076, WL189021 (4th Cir. Apr. 19, 1996) (unpublished decision) (court declined to consider claims argument that location expert testimony was unreliable because the argument was not raised at the administrative level or in the District Court.). The Court also observes that Plaintiff was represented by counsel at his administrative hearing before the ALJ and at his request for a review by the Appeals Council. However, no new medical evidence was presented to the Appeals Council to explain or supplement any of the "doctor's notes [which were] handwritten and illegible."

       The Court finds that the ALJ's decision in this matter was supported by substantial evidence, and her determinations were adequately explained as required by the applicable regulations. For the reasons cited herein, the Court finds that Plaintiff's objections should be overruled.

VI.

Accordingly, based on the foregoing, the Court **ORDERS** that the Magistrate Judge's Proposed Findings and Recommendation (Document 15) be **ADOPTED**, that Defendant's Brief in Support of Judgment on the Pleadings (Document 13) be **GRANTED**, that Plaintiff's Brief in Support of Judgment on the Pleadings (Document 12) be **DENIED**, that the final decision of the Commissioner be **AFFIRMED** and that this matter be **DISMISSED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   March 7, 2012

IRENE C. BERGER  
UNITED STATES DISTRICT JUDGE  
SOUTHERN DISTRICT OF WEST VIRGINIA

17